ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA 2005 DEC 15  PM 1: 17

AUGUSTA DIVISION

CLERK _____
SO. DIST. OF GA.

CURTIS EUGENE NEWSON,       )
                            )
          Plaintiff,        )
                            )
     v.                     )    CV 104-121
                            )
EVONNE SMITH, et al.,       )
                            )
          Defendants.       )

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

Plaintiff, proceeding *pro se* and *in forma pauperis*, brought the instant suit pursuant

to 42 U.S.C. § 1983 while incarcerated at Hays State Prison in Trion, Georgia.  Plaintiff

alleges that his constitutional rights were violated by Defendants while he was an inmate at

Augusta State Medical Prison in Grovetown, Georgia.  The matter is now before the Court

on Defendants' motions for summary judgment.  (Doc. nos. 48, 52).  Because Plaintiff has

not filed a response, the Court deems the motion for summary judgment to be unopposed.[1]

---

[1]As explained in the Court's Order of August 30, 2005, the documents filed on Plaintiff's behalf by
Ms. Imrana Muhammad Ali in response to Defendants' motions for summary judgment have been stricken from
the record because Ms. Ali failed to apply for admission *pro hac vice*.  (See doc. no. 66; see also CareKeeper
Software Developer Co., Inc. v. Silver, 46 F. Supp.2d 1366, 1369 (N.D. Ga. 1999)(warning that if counsel fails
to apply for admission *pro hac vice*, all pleadings filed by counsel will be struck)).  In accord with the notice
requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), upon striking Ms.
Ali's filings, the Court provided Plaintiff until on or about September 29, 2005 to file opposition to Defendants'
motions.  (See id.).  As explained in a separate Order, Plaintiff has failed to respond, and the Court thus deems
the instant motions unopposed.
    Of course, the Court acknowledges that the mere fact that the instant motions are unopposed does not
entitle the Court to grant the motions without considering the merits.  United States v. One Piece of Real
Property Located at 5800 SW 74th Ave., Miami, Florida, 363 F.3d 1099, 1101 (11th Cir. 2004)("[T]he district
court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather,
must consider the merits of the motion.").  The Court also notes in passing that even if the documents filed by
Ms. Ali were properly considered, they would have no material impact on the Court's analysis.

See Loc. R. 7.5.  For the following reasons, the Court **REPORTS** and **RECOMMENDS**
that Defendants' motions for summary judgment (doc. nos. 48, 52) be **GRANTED**, that this
civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Defendants.

## I. STATEMENT OF FACTS

### A.      Plaintiff's Version

Plaintiff contends that Defendants Smith, Dance, and Mellinger were deliberately
indifferent to his serious medical needs in violation of the Eighth Amendment while he was
incarcerated at Augusta State Medical Prison ("ASMP").[2] According to Plaintiff's complaint
and amended complaint, his problems began when he suffered from an "incarcerated"
inguinal hernia, first diagnosed on February 5, 2002.  Compl., p. 9; Amd.Compl., p. 6.
Following this diagnosis, he was given a "profile" for a bottom bunk.  Compl., p. 10.
Nevertheless, Defendants Smith and Dance refused Plaintiff's requests for a bottom bunk and
made him sleep in a top bunk, exacerbating Plaintiff's hernia.  Id. at 10-11.

On September 2, 2002, Plaintiff was scheduled for surgery, but inexplicably was
transferred from ASMP to Hays State Prison on September 2, 2002.  As a result, Plaintiff's
hernia surgery was causelessly delayed.  Id.  Indeed, surgery was not approved again until
June 13, 2003 when Defendant Mellinger saw Plaintiff.  Id.  Defendant Mellinger also
informed Plaintiff that it would be an additional "four to seven" months before the surgery
could be performed--a dangerous delay in Plaintiff's view.  Id. at 12.  Plaintiff's condition
only worsened until he finally received surgery in October 2003.  Id.  According to Plaintiff,
the delay in his medical treatment constituted deliberate indifference to his serious medical

---

[2]All of the other defendants have been dismissed.

2

needs. Amd. Compl., p. 9.

**B.      Defendants' Version**

    **1.      Defendant Mellinger**

Of course, Defendants contest Plaintiff's allegations.  First, Defendant Mellinger, a surgeon and professor at the Medical College of Georgia who has provided medical services to inmates at ASMP in the past (see doc. no. 49 ("Mellinger Aff.")), explains that he first examined Plaintiff on June 23, 2003, at which time he noticed that Plaintiff's hernia was "reducible"--rather than "incarcerated."[3]  (Id.).  Because Plaintiff's hernia was reducible, Defendant Mellinger determined that the hernia "was not urgent or an emergency that required immediate medical attention."  Mellinger Aff., p. 3.  Defendant Mellinger recommended "non-urgent surgical repair." Id.

Unfortunately, due to "administrative error," Plaintiff instead returned to see Defendant Mellinger on July 21, 2003 "for the same surgical consult" Defendant Mellinger had already performed.  Id. Plaintiff's condition was unchanged, and Defendant Mellinger once again recommended non-emergency surgery.  According to Defendant Mellinger, he never had the authority to actually order Plaintiff's surgery; rather, Defendant Mellinger's recommendation set in motion a series of administrative steps governed by Georgia

---

[3]As Defendant Mellinger explains:

    There are three stages of a hernia: reducible, incarcerated, and strangulated. Reducible means that the bodily tissues can be pressed back into the abdominal cavity with manual pressure.  Incarcerated means that they can no longer be pushed back into the body, and strangulated means they have twisted or kinked such that the blood supply is cut off and the exposed tissue will die. There is no serious medical risk or harm posed to the patient by not treating a reducible hernia, unless and until it becomes incarcerated or strangulated.

Mellinger Aff., p. 2.

Department of Corrections ("DOC") Standard Operating Procedures ("SOP").[4]  According

to Defendant Mellinger, DOC staff in Atlanta review all recommendations for non-urgent

surgery and make the ultimate determination regarding whether to approve any surgical

procedure.[5]  Id.  Only after the DOC has approved the surgery will ASMP staff schedule the

procedure.    Id.    According to Defendant Mellinger, his surgical consultation and

recommendation constituted his only role in this process, and he did not see Plaintiff again.

Id. at 3, 4.  Defendant Mellinger also acknowledges that there was "a backlog in [non-

emergency] surgeries that had been approved by [DOC]" and that it was not unusual for

approved non-emergency surgeries to "take some months" to actually be performed.  Id. at

4.  Nevertheless, Defendant Mellinger avers that Plaintiff's hernia did not merit emergency

attention, and that his actions in treating Plaintiff were proper.  Id. at 5.

### 2.    Defendants Smith and Dance

Likewise, Defendants Smith and Dance deny that they forced Plaintiff to sleep on a

top bunk despite knowing that his hernia required that he be placed in a bottom bunk.  Smith

Aff., p. 1 (attached to doc. no. 53); Dance Aff., p. 1 (attached to doc. no. 53).  Defendant

---

[4]In order to explain this administrative process in greater detail, Defendant Mellinger has provided
the affidavit of Dr. Edward Bailey, Medical Director of Georgia Correctional Healthcare. (Doc. no. 50-1). Dr.
Bailey explains that the surgery approval process, as dictated by SOP VH17-0001 and VH 18-0003 (attached
at doc. no. 50), progresses as follows.
    First, a clinician requests the surgical procedure. Bailey Aff., p. 2. Next, the request is logged into
a computer system by a nurse or clerk (not the recommending doctor) who sends the request to the "Utilization
Management Staff," a group of DOC officials including Dr. Bailey, who then approve or disapprove the
recommendation. Id. at 3. If the surgery is approved, the Utilization Management Staff schedule the surgery
directly. Id. Thus, once the clinician has made his recommendation for non-emergency surgery, his role in the
process is over.
    Of course, the procedure for emergency procedures is somewhat different, as also explained by Dr.
Bailey. However, as these procedures were not invoked because Defendant Mellinger did not find that
Plaintiff's hernia required emergency treatment, the Court will not describe those procedures herein.

[5]Defendant Mellinger also explains that he could only have directed that surgery be performed without
prior DOC approval if Plaintiff had "presented with a life-threatening medical emergency." Mellinger Aff., p.
4.

4

Smith, a counselor at ASMP, further explains: (1) she is not a medical professional and had no connection with Plaintiff's medical care; (2) as a Counselor, she has no role in the assignment of bottom bunk profiles or inmate placement; (3) Plaintiff did not receive a bottom bunk profile until June 25, 2002, when his surgical consult was completed; (4) inmates with bottom bunk profiles do not receive bottom bunks immediately, but must wait their turn as bed assignments become available; (5) once Plaintiff did receive a bottom bunk profile, he frequently lost his bunk assignments in the general population due to placement in administrative segregation because of disciplinary problems; and (6) on August 2, 2002 Defendant Smith witnessed Plaintiff jumping off a bench and dancing.  Smith Aff., pp. 1-6.

Likewise, Defendant Dance, a corrections officer at ASMP explains that he had no "involvement in determining inmates' housing, room, or bed assignments."  Dance Aff., p. 2.  Nevertheless, Defendant Dance does state that on June 13, 2002, acting pursuant to the orders of another corrections officer, he instructed Plaintiff to move to a top bunk in a different dormitory at ASMP.  Id.  Plaintiff refused, stating that he did not want to move because he would be closer to "some of his enemies;" Plaintiff did not indicate that he could not sleep on a top bunk for medical reasons, and of course he was not given a bottom bunk profile until June 25, 2002.  Id.

Plaintiff was given a disciplinary report for failing to comply with Defendant Dance's instructions regarding his new housing assignment.  Id.  When Plaintiff appealed the disciplinary action, he cited his new bottom bunk profile.  Id.  According to Defendant Dance, at no time did he ever order Plaintiff to move to a top bunk despite knowing that Plaintiff needed a bottom bunk.  Id.  Finally, Defendant Dance avers that, as a corrections officer, he had no role in Plaintiff's medical care.  Id. at 3.

## II.  DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[6] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).  On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).  Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608.  Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S.

---

[6]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.      Merits of Plaintiff's Claims**

To survive Defendants' motions for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude: (1) that Plaintiff had an objectively serious medical need, and (2) that Defendants acted with deliberate indifference to that need. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). Defendants agree that Plaintiff's hernia constituted a serious medical need. However, to show that Defendants were deliberately indifferent to that need, Plaintiff must offer some proof that Defendants: (1) were subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendants disregarded that risk (3) by following a course of action which constituted "more than mere negligence." Id. In addition, the prisoner plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill v. Dekalb

7

Regional Youth Detention Center, 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 (11th Cir. 2003)("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

Under this standard, Plaintiff's claims against Defendant Mellinger fall woefully short. First, Defendant Mellinger's involvement in Plaintiff's medical care amounted to nothing more than a consultative examination followed by a recommendation that Plaintiff receive hernia surgery. Plaintiff has offered nothing from which to suppose that Defendant Mellinger was negligent, much less any evidence to support an inference that Defendant Mellinger knew about and disregarded a risk to Plaintiff's health. Moreover, even assuming *arguendo* that Defendant Mellinger was responsible for the delay in Plaintiff's surgery, Plaintiff has provided no verifying medical evidence establishing that the delay in his surgery actually had a detrimental effect upon his health. Accordingly, Defendant Mellinger's motion should be granted.[7]

---

[7]The Court underscores here that "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." West, 320 F.3d at 1243 (internal quotation and citation omitted). Furthermore, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991)(quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980)(Bowen, J.)). Here, Plaintiff does not aver that he was not receiving medical attention, but rather that ASMP medical professionals acted with deliberate indifference when they did not pursue Plaintiff's preferred course of treatment with the speed he deemed necessary. However, in the absence of evidentiary support for Plaintiff's claim that the delay in his surgery was life-threatening and resulted in permanent harm, his accusation rings hollow.

In essence, Plaintiff's case presents little more than a difference of opinion between Plaintiff and Defendant Mellinger as to the urgency of Plaintiff's need for surgery. A mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim of cruel and unusual punishment. Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). That is, the burden of proving deliberate indifference cannot be met simply by arguing that an inmate

8

Likewise, Plaintiff's claims regarding his placement in a top bunk against Defendants Smith and Dance also fail. Plaintiff has not demonstrated that these Defendants were responsible for placing him in a top bunk, much less that they did so with the subjective awareness that putting him in a top bunk would exacerbate his hernia and put him at serious risk of harm. Indeed, these Defendants have furnished proof that they had no input in Plaintiff's bunk assignments, and indeed that they were not aware that putting Plaintiff in a top bunk would pose any serious risk to Plaintiff's health. Accordingly, the motion for summary judgment filed by Defendants Smith and Dance should also be granted.[8]

---

wanted a different type of treatment. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . . Id. (citation omitted)). In sum, Plaintiff's claims against Defendant Mellinger lack merit.

[8]The Court is aware of Defendants' argument that Plaintiff failed to exhaust administrative remedies. (Doc. no. 52-1, pp. 18-20). In support, Defendants show that Plaintiff presented defense counsel with two grievances he had pursued against Defendants at his deposition. See Pl.'s Exs. 7 & 8 (attached to doc. no. 54). If these two grievances represent the sum total of Plaintiff's attempts to exhaust administrative remedies as to his claims, Defendants' argument is correct, as neither of these grievances address his concerns regarding being given a top bunk. To properly exhaust administrative remedies, a prisoner must "provide during the grievance process all of the information concerning his claims that he has or reasonably could obtain." Brown v. Sikes, 212 F.3d 1205, 1210 (11th Cir. 2000); see also Goldsmith v. White, 357 F. Supp.2d 1336, 1339 (N.D. Fla. 2005) ("[I]f an inmate was not required to provide enough information to allow prison officials to investigate the inmate's real complaint, the purposes for which Congress adopted the exhaustion required would not be met. Thus . . . 'inmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures.'" (citation omitted)).

Nevertheless, the Court declines to rest its recommendation on Defendants' argument. It is true that "[a] claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998). However, here Plaintiff does allege that he exhausted administrative remedies. Compl, p. 4. It is at least arguable that Plaintiff's allegations place the burden of proving lack of exhaustion squarely on Defendants. Although the Eleventh Circuit has yet to address the issue, several of the courts of appeal have concluded that failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant. See Anderson v. XYZ Correctional Health Care Services, Inc., 407 F.3d 674, 583 (4th Cir. 2005); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.2003); Casanova v. Dubois, 304 F.3d 75, 77 n.3 (1st Cir.2002); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir.2002); Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir.2001); Perez v. Wis. Dep't of Corr., 182 F.3d 532, 536 (7th Cir.1999); Jenkins v. Haubert, 179 F.3d 19, 29 (2d Cir.1999). Of course, at least two circuits have concluded that the prisoner plaintiff carries the burden of proving that he has exhausted all available administrative remedies. See Bey v. Johnson, 407 F.3d 801, 805 (6th Cir. 2005); Steele v. Federal Bureau of Prisons, 355 F.3d 1203, 1211 (10th Cir. 2003).

Regardless, in the absence of definitive proof as to the exhaustion question, the Court is loathe to rest its analysis on Defendants' averments alone. Defendants have not submitted any grievance filing history or affidavit from a record keeper showing Plaintiff has not filed any other grievances related to his claims. Indeed,

### III. CONCLUSION

For the reasons explained above, the Court **REPORTS** and **RECOMMENDS** that

Defendants' motions for summary judgment (doc. nos. 48, 52) be **GRANTED**, that this civil

action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Defendants.[9]

SO REPORTED and RECOMMENDED this 15th day of December, 2005, at

Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

the documents filed by Ms. Ali, discussed *supra* at footnote 1, although stricken, indicated that Plaintiff filed other grievances regarding his claims.  (See, e.g., doc. no. 59-2, p. 3).  Thus, in the absence of evidence demonstrating a failure to exhaust, the Court is persuaded that it must reach the merits of Plaintiff's claims.  At any rate, the matter is of little moment, as even assuming that Plaintiff has exhausted available administrative remedies, his claims fail and Defendants are entitled to judgment as a matter of law.

[9]Having determined that Plaintiff's claims fail on the merits, the Court need not reach Defendants' qualified immunity arguments.

# United States District Court
## *Southern District of Georgia*

ATTORNEYS SERVED:

CURTIS EUGENE NEWSON, PRO SE
ANDREW M. MAGRUDER
JESSE W. OWEN
VINCENT A. TORENO
JAMES S.V. WESTON

CASE NO:        CV 104-121

DATE SERVED: 12/15/05

SERVED BY:    J.A. HOWELL, III

☐   Copy placed in Minutes
☐   Copy given to Judge
☑   Copy given to Magistrate